STATE OF ILLINOIS )
 ) ss
COUNTY OF COOK )      CHARGE NO: <u>2019CF1455</u>

### AFFIDAVIT OF SERVICE

  MARIA ELENA BARRIOS, deposes and states that (s)he served a copy of the attached NOTICE OF SUBSTANTIAL EVIDENCE upon each person named below by depositing the same this <u> 26ST </u> day of <u>February 2020</u>, in a U.S. Mail Box at 100 West Randolph Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addresses as follows:

Jolianne S. Alexander
Mirabella, Kincaid, Frederick & Mirabella, LLC
1737 S. Naperville Road, Suite 100
Wheaton, IL 60189

Jennifer J. Froehlich, Esq.
Holland & Knight, LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that (s)he verily believes the same to be true.

<u>Maria Elena Barrios</u>
Maria Elena Barrios

SUBSCRIBED AND SWORN TO BEFORE ME

THIS <u>26TH</u> DAY OF <u>February,</u> <u>2020</u>

<u>Patricia Almaraz</u>
NOTARY PUBLIC

PATRICIA ALMARAZ
Official Seal
Notary Public – State of Illinois
My Commission Expires Sep 18, 2021



EXHIBIT
A



ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

February 26, 2020

Jolianne S. Alexander
Mirabella, Kincaid, Frederick & Mirabella, LLC
1737 S. Naperville Road, Suite 100
Wheaton, IL 60189

Jennifer J. Froehlich, Esq.
Holland & Knight, LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606

RE: <u>Maria Cardenas vs. Castle Credit Co-Holdings, 2019CF1455</u>

## **NOTICE OF SUBSTANTIAL EVIDENCE AS TO COUNTS A & B**

YOU ARE HEREBY NOTIFIED, the Director of the Illinois Department of Human Rights ("Department") has concluded that there is Substantial Evidence that a civil rights violation has been committed.

### <u>Complainant has the following options:</u>

1) Within thirty (30) days of receipt of this Notice of Substantial Evidence, notify the Department in writing if you wish the Department to file a complaint with the Illinois Human Rights Commission ("Commission") pertaining to the allegation(s). Your request should be sent to: Chief Legal Counsel, Illinois Department of Human Rights, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

The Illinois Human Rights Act ("Act") permits the Department to conduct conciliation to give the parties an opportunity to settle the case before a complaint is filed with the Commission. Conciliation is a process in which a Department Staff Attorney facilitates settlement discussions with both parties via telephone. Should you notify the Department as outlined above, that you wish the Department to file a complaint with the Commission, I have been designated by the Director to CONCILIATE this case.

You also have the opportunity to use the mediation process to resolve your case if both parties agree and time-constraints for filing a complaint according to the Act can be met. Mediation is a form of alternative dispute resolution. Parties to a Department charge meet voluntarily in an informal atmosphere with a certified mediator to discuss voluntary settlement options to close the Department charge. All mediation settlement conferences are held in the Department's Chicago office. Please contact me if you are interested in resolving your case through mediation.

All settlement efforts are confidential and must be concluded within ninety (90) days of receipt of this notice. If it is determined there is not a reasonable possibility of settlement, I will prepare a complaint against Respondent, file it with the Commission and serve a notice of such filing on all parties, pursuant to Section 7A-102(F) of the Act. It is then the responsibility of the parties to proceed forward with the case in the Commission.

**Or**

2) Complainant may within ninety (90) days of receipt of this Notice, file a complaint with the Commission. If Complainant files a complaint with the Commission, Complainant must also give notice of such filing to the Department.

**Or**

3) Complainant may commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. The civil action should be filed in the circuit court in the county in which the civil rights violation was allegedly committed.

Armando A. Mojica, Jr.
Staff Attorney
(312) 814-1918

 

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; See Privacy act statement before completing this form.<br><br>#19M1211.11 | AGENCY<br>☒ IDHR<br><br>☐ EEOC | CHARGE NUMBER<br><br>2019CF1455 |
|---|---|---|

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.)<br>Maria Cardenas | TELEPHONE NUMBER (include area code)<br>(312)217-2001 | |
|---|---|---|

| STREET ADDRESS<br>6114 Oldcreek Ln. | CITY, STATE AND ZIP CODE<br>Joliet, IL 60431 | DATE OF BIRTH<br>/ /<br>M D Y |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT<br>Castle Credit Co. Holdings, LLC | NUMBER OF EMPLOYEES, MEMBERS 15+<br>15+ | TELEPHONE NUMBER (include area code)<br>(800)451-4434 |
|---|---|---|

| STREET ADDRESS<br>8430 W. Bryn Mawr Ave., Suite 750 | CITY, STATE AND ZIP CODE<br>Chicago, IL 60631 | COUNTY<br>Cook |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON:<br><br>Sexual harassment, retaliation | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br>5/6/16-7/11/18<br>☒ CONTINUING ACTION |
|---|---|

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

<u>Technical Amendment</u>

This Technical Amendment is being made to correct Respondent's name.

Page 1 of 1

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME<br>THIS 19th DAY OF September, 2019<br>X _____<br>NOTARY SIGNATURE |
|---|---|

OFFICIAL SEAL
CIERRA DEGLEFFETTI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/12/21

NOTARY STAMP

X _____  9-19-19
SIGNATURE OF COMPLAINANT    DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief

EEO-5 FORM (3/15-INT)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

#19MI211.11

| AGENCY | CHARGE NUMBER |
|---|---|
| ☒ IDHR | 2019 CF 1455 |
| ☐ EEOC | |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Maria Cardenas | (312) 217-2001 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| | 6114 Oldcreek Lane, Joliet, Illinois 60431 | 03 / 09 / 1964 |
| | | M   D   YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (Include area code) |
|---|---|---|
| Castle Credit Co-Holdings | | (800) 451-4434 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | 8430 W. Bryn Mawr Avenue, Suite 750, Chicago, Illinois 60631 | Cook |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Sexual Harassment | May 6, 2016 - July 11, 2018 |
| | ☒ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

### SEE ATTACHED

Dept. of Human Rights
INTAKE UNIT
DEC 11 2018
RECEIVED

Page 1 of

| | |
|---|---|
| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME THIS 4TH DAY OF DEZEMBER, 2018.  SEE ATTACHED JURAT. NOTARY SIGNATURE |
| | SIGNATURE OF COMPLAINANT                    DATE  12-4-18 |
| NOTARY STAMP | I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |




## JURAT WITH AFFIANT STATEMENT

State of _____ FL _____

County of _____ COOK _____ } ss.

☒ See Attached Document (Notary to cross out lines 1–7 below)
☐ See Statement Below (Lines 1–7 to be completed only by document signer[s], not Notary)

_____

_____

_____

_____

_____

_____
Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

Subscribed and sworn to (or affirmed) before me

this _4TH_ day of _DECEMBER_ _2018_, by
        Date         Month        Year

MARIA  M  CARDENAS
Name of Signer No. 1

---

DANIEL IRLA
Official Seal
Notary Public - State of Illinois
My Commission Expires Aug 3, 2019

_____
Name of Signer No. 2 (if any)

_____
Signature of Notary Public

DANIEL  IRLA
Any Other Required Information
(Residence, Expiration Date, etc.)

Place Notary Seal/Stamp Above

---

──────────────── OPTIONAL ────────────────

*This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Charge of Diserination to the
Title or Type of Document: EFOC Illinois Department of Human Rights Act

Document Date: _12-4-18_          Number of Pages: _9_

Signer(s) Other Than Named Above: _____

©2017 National Notary Association



## CHARGE OF DISCRIMINATION TO THE
## ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EEOC

### COMPLAINANT

COMPLAINANT, MARIA CARDENAS, (hereinafter "MARIA"), is a female citizen born March 9, 1964, (presently age 54), residing in Joliet, Illinois, who was formerly employed by Castle Credit Co Holdings, LLC, as the Late-Stage Manager/Collector, from on or about May 6, 2016, until she was involuntarily terminated on July 11, 2018.

### RESPONDENT

CASTLE CREDIT CO HOLDINGS, LLC, (hereinafter "CASTLE"), is an "employer" within the meaning of the Illinois Human Rights Act, ("IHRA"), and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. 775 ILCS 5/2-101(B); 42 U.S.C. § 2000e(b). CASTLE, at all times relevant, was qualified to do business in the State of Illinois and was doing business at 8430 W. Bryn Mawr Avenue Suite 750, Chicago, Illinois 60631.

### ISSUE/BASIS

I.      Sexual Harassment beginning in February, 2018, and continuing unabated through June, 2018, which created an intimidating, hostile, and offensive work environment in violation of the IHRA and Title VII. 775 ILCS 5/2-102(D); 42 U.S.C. § 2000e-2(a).

II.     Retaliation for complaining about sexual harassment resulting in termination on July 11, 2018, in violation of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964, as amended. 775 ILCS 5/6-101(A); 42 U.S.C. § 2000e-3(a).

### COUNT I – SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
*(Hostile Work Environment Sexual Harassment in violation of*
*775 ILCS 5/2-102(D) & 42 U.S.C. § 2000e-2(a))*

1.      MARIA, a female, is a protected person under the IHRA and Title VII.

 

2.     On or about May 6, 2016, CASTLE hired MARIA as the Late-Stage Manager/Collector after entering into an asset purchase agreement with MARIA's former employer, Castle Credit Corporation.

3.     After the merger, CASTLE re-employed many of Castle Credit Corporation's existing staff, including Luis Miranda, who, at that time, was employed as a Collector reporting to MARIA.

4.     For the timeframe between May 6, 2016, and October, 2016, MARIA reported to Thomas Anderson, CASTLE's Chief Executive Officer. From October, 2016, through May 17, 2018, MARIA reported to Alexandra ("Sasha") Baron, Vice President of Operations. Then, beginning on May 17, 2018 and continuing until she was unlawfully terminated on July 11, 2018, MARIA reported to Barb Kowalczyk, Manager of Collections and Human Resources.

5.     At all times relevant, MARIA was an exceptional performer who met CASTLE's legitimate performance expectations.

6.     During the timeframe between May 6, 2016, and June, 2017, MARIA was subjected to numerous instances of sexual harassment by her subordinate, Luis Miranda. Examples of Luis Miranda's sexually harassing conduct include, but are not limited to, the following:

> a. On or about May 6, 2016, Luis Miranda, who was visibly upset for reasons unknown to MARIA, stated to MARIA "calm me down. Let's go to the hotel." MARIA responded to Miranda that he should "get away" from her. MARIA also reported the incident to her then supervisor, Thomas Anderson, by stating "he keeps inviting me to the hotel."

> b. In May, 2016, Luis Miranda approached MARIA's cubicle and stated, "what would I do with those tits." MARIA responded, "you're a sicko." One of

 

MARIA's coworkers, Bonita, observed Miranda's unlawful behavior and stated to him, "don't talk to MARIA that way."

c.  On numerous occasions, Luis Miranda would routinely time his departures from work with MARIA so he could purposefully walk out of the building with her. For example, when MARIA left work for the day, she would exit using the elevator. On multiple occasions when MARIA entered the elevator, Miranda would rush up to the elevator and block the door from closing with his hand. After reopening the elevator, he would enter and state to MARIA, "You're not going to wait for me to go to the hotel?"

d.  On numerous occasions throughout the relevant timeframe, when Luis Miranda would call MARIA on the phone, he would state, "You know who this is; this is your man." MARIA would hang up the phone on him.

e.  On numerous occasions throughout the relevant timeframe, Luis Miranda would call MARIA and breathe heavily on the phone to mimic the sounds of sexual pleasure.

f.  On at least one occasion during the relevant timeframe, Luis Miranda approached MARIA from behind and got so close to her that she felt him breathing on the back of her neck. Surprised by how close Miranda had gotten to her body, MARIA exclaimed, "Luis, get away from me and keep your distance."

g.  On a day-to-day basis during the relevant timeframe, while in the lunchroom, Luis Miranda would repeatedly look MARIA up and down in a sexual manner,

 

bite his lips, and wink at MARIA. MARIA returned Miranda's sexual looks with a disgusted look.

h. During the Christmas season of 2016, Luis Miranda approached MARIA and asked her whether she wanted to "be his date" for the Christmas party. MARIA rejected him instantly.

7. At all times, MARIA found the ongoing pattern of sexual harassment extremely unwelcome and offensive.

8. On a weekly basis between the timeframe of May 6, 2016, and June, 2017, MARIA reported Luis Miranda's unlawful sexual harassment to her then supervisors, Thomas Anderson and Sasha Baron.

9. In June, 2017, CASTLE transferred Luis Miranda to the sales department.

10. Luis Miranda's transfer to the sales department effectively remedied MARIA's sexually harassing hostile work environment.

11. In February, 2018 CASTLE transferred Luis Miranda back to the collections department.

12. After Luis Miranda returned to the collections department, he began to once again subject MARIA to numerous instances of unwelcome and offensive sexual harassment based upon her sex on a frequent, ongoing and daily basis through June, 2018. The ongoing sexual harassment that MARIA was again subjected to included, but was not limited to, the following instances:

a. Immediately on his return to the collections department in February, 2018, Luis Miranda approached MARIA's cubicle and stated, "I'm back and this time, you are going to take me to the hotel." MARIA responded, "Luis, get away from me."



b.  In the end of February, 2018, while in the kitchen, Luis Miranda bit his lips and stated to MARIA in a sexually suggestive manner, "what would I do with you?"

c.  At the end of February/beginning of March, 2018, Luis Miranda approached MARIA's cubicle and once again asked, "why don't we go to the hotel?"

d.  Throughout the relevant timeframe, beginning in March, 2018, and continuing through May, 2018, Luis Miranda resumed his behavior of timing his work departures with MARIA's. Miranda began to, once again, routinely get on the elevator with MARIA and invite her to a hotel.

e.  On a daily basis throughout the relevant timeframe, Luis Miranda would take every opportunity in which he saw MARIA to give her sexually suggestive looks, bite his lips, and stare at her breasts.

f.  During the first week of June, 2018, Luis Miranda purposefully bumped into MARIA by the printer, blocking her exit, and stated, "when are we going to the hotel?"

g.  Each time Luis Miranda engaged in sexually harassing behavior towards MARIA, MARIA would tell Miranda to get away from her and to leave her alone. Miranda often retorted, "I love it when you get hostile."

13.  At all times, MARIA found the ongoing pattern of sexual harassment extremely unwelcome and offensive.

14.  MARIA complained about Luis Miranda's sexually harassing conduct to her then supervisor, Sasha Baron, and then began reporting Miranda's continued behavior to her new supervisor, Barb Kowalczyk, who took over Baron's duties on May 17, 2018.

 

15.     Despite MARIA's repeated complaints, CASTLE took no actions to correct or stop the Luis Miranda's sexually harassing conduct.

16.     Instead of taking any actions to stop the sexually harassing conduct, CASTLE promoted Luis Miranda to a Mid-Stage Manager position, which was on the same level as MARIA, in approximately May, 2018.

17.     Disturbed by the lack of any response to her complaints, MARIA reported Luis Miranda's unlawful sexual harassment to Barb Kowalczyk's supervisor, Peter (last name unknown) in June, 2018. During this meeting, MARIA began crying and pleading with Peter that he take actions to stop Luis Miranda's sexually harassing behavior towards her. Peter responded "I don't know MARIA, I don't know about you." Peter also stated that it was "such a waste of talent that MARIA and Luis Miranda could not work together." MARIA responded, "The reason I can't work with him is because he is sexually harassing me." Despite MARIA's complaints, Peter, without offering any reasonable corrective measure, mandated that MARIA had to continuing working with Luis Miranda.

18.     CASTLE continued to take no actions in response to MARIA's complaints, or take any reasonable corrective measures. CASLTE also refused to discipline Luis Miranda in any way. Instead, CASTLE again promoted Luis Miranda to a Mid and Late-Stage Manager/Collector position after MARIA was terminated on July 11, 2018.

19.     The ongoing pattern of sexual harassment had the effect of, and did create, a hostile, intimidating, and abusive work environment for MARIA, and had the purpose and effect of substantially interfering with MARIA's ability to perform the duties of her job.

20.     As a direct result of the sexual harassment imposed on MARIA, MARIA suffered actual damages, including but not limited to emotional distress, humiliation, damage to her

 

professional and personal reputation, and pain and suffering, including the exacerbation of MARIA's known preexisting condition of Rheumatoid Arthritis.

WHEREFORE, Complainant, MARIA CARDENAS, respectfully requests that a Notice of Substantial Evidence be issued against Respondent, CASTLE CREDIT CO HOLDINGS, LLC, on her Count I claim and for such other relief as is just and equitable.

### COUNT II – RETALIATION
*(Retaliation in violation of 775 ILCS 5/6-101(A) & 42 U.S.C. § 2000e-3(a))*

1-20. MARIA reincorporates and re-alleges Paragraphs 1-20 of Count I as if fully set forth herein.

21. On repeated occasions between May, 2018, and July, 2018, MARIA engaged in protected activity by reporting Luis Miranda's unlawful sexual harassment to management on behalf of herself and others.

22. On or about June 13, 2018, MARIA received reports that two of her subordinates had also been sexually harassed by Luis Miranda.

23. MARIA, in accordance with CASTLE's policy, reported the same to her supervisor, Barb Kowalczyk.

24. After MARIA escalated her subordinates' complaints, as well as her own, to upper management, CASTLE failed to take any reasonable corrective measures to correct or stop Luis Miranda's unlawful sexual harassment.

25. Given CASTLE's inaction to remedy Luis Miranda's unlawful conduct towards numerous women, on July 9, 2018, MARIA escalated her complaints to Thomas Anderson, CASTLE's CEO. During this meeting, MARIA recommended that CASTLE terminate Luis Miranda.

 

26.     Immediately after MARIA recommended that CASTLE terminate Luis Miranda, Thomas Anderson told MARIA to go home. MARIA responded by insisting that "Luis is a sexual harasser." Thomas Anderson then continued to mandate that MARIA leave the premises and go home.

27.     Two days later, on July 11, 2018, CASTLE terminated MARIA and gave her no reason for her termination.

28.     After terminating MARIA, CASTLE has continued to employ Luis Miranda, and has since promoted him to the position of Mid and Late-Stage Manager/Collector.

29.     CASTLE terminated MARIA's employment because she complained about unlawful sexual harassment on behalf of herself and others.

30.     As a result of CASTLE's unlawful retaliatory actions, MARIA suffered actual damages, including but not limited to emotional distress, humiliation, damage to her professional and personal reputation, and pain and suffering, including the exacerbation of MARIA's known preexisting condition of Rheumatoid Arthritis.

[Intentionally Blank]

 

WHEREFORE, Complainant, MARIA CARDENAS, respectfully requests that a Notice of Substantial Evidence be issued against Respondent, CASTLE CREDIT CO HOLDINGS, LLC, on her Count II claim and for such other relief as is just and equitable.

Respectfully submitted,

_12-4-18_

MARIA CARDENAS

SUBSCRIBED and SWORN to
Before me this ___ day
of _DECEMBER_, 2018.
SEE ATTACHED JURAT
Notary Public

Counsel for the Complainant affixes her signature hereto and on information and belief is of the opinion that the foregoing is true and accurate.

JOLIANNE S. WALTERS
One of Complainant's Attorneys

Mirabella, Kincaid, Frederick & Mirabella, LLC
Attorneys for Complainant
1737 S. Naperville Road, Suite 100
Wheaton, IL 60189
Ph: (630) 665-7300
Fax: (630) 665-7609
jolianne@mkfmlaw.com

Page 9 of 9

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**
**INVESTIGATION REPORT**

| | | | |
|---|---|---|---|
| **Complainant:** | Maria Cardenas | **IDHR No.:** | 2019CF1455 |
| **Respondent:** | Castle Credit Co. Holdings, LLC | **EEOC No.:** | 21BA90749 |

**Investigator:** AP1      **Supervisor:** _MUR_   **Date:** _2 - 5 - 20_

**Issue/Basis:**                         **Finding:**

A.  Sexual harassment/sexual harassment          A.  Substantial evidence
B.  Discharge/retaliation                         B.  Substantial evidence

**Jurisdiction:**

Alleged violation:                    A.  May 6, 2016 – July 11, 2018
                                      B.  July 11, 2018
Charge filed:                            December 7, 2018
Charge perfected:                        December 7, 2018
Amendments:                              September 19, 2019 (Technical)
Number of employees:                     45

**Verified Response:**

Note:  Pursuant to Public Act 100-0492, a verified response is not required for a charge filed on or after September 8, 2017.

**Employment Data:**

Respondent reported that at the time of Complainant's allegations Respondent employed 45 employees of which 23 (51%) were sex, female.  Respondent reported that Respondent employed three (3) Collections Managers, of which one (1) (33%) was female.  Employers are not required to compile collective data regarding the protected basis of retaliation at issue in the charge.

**Uncontested Facts:**

1.  Respondent is a provider of financing and collections services.

2.  On May 6, 2016, Respondent purchased Complainant's former employer, Castle Credit Co., and Complainant became an employee of Respondent as a Collections Manager.

3.  On July 11, 2018, Complainant was discharged.

Charge No.: 2019CF1455
Page 2 of 17

**Complainant's Allegations – Count A:**

Complainant, a former Collections Manager for Respondent, alleges that from May 6, 2016 through July 11, 2018, she was subjected to sexual harassment by Luis Miranda (male, no PA[1]), Business Development Mediation Manager. Complainant maintains that the harassment consisted of unwanted sexually offensive and inappropriate sexually-related comments and looks by Miranda. Complainant maintains that the conduct created a sexually hostile, intimidating and offensive work environment which substantially interfered with her ability to perform her job functions. Complainant maintains that she repeatedly reported the sexual harassment Respondent, but no action was taken by Respondent as a result of her complaints.

**Respondent's Defenses – Count A:**

Respondent denies that Complainant was subjected to sexual harassment in Respondent's workplace from May 6, 2016 through July 11, 2018, or at any time during her employment with Respondent. Respondent denies Complainant's allegations that Miranda made inappropriate sexual-related comments to Complainant. Respondent maintains that Complainant did not report the alleged sexual harassment by Miranda. Respondent denies Complainant's assertion that Respondent created a hostile, intimidating and offensive work environment which substantially interfered with Complainant's ability to perform her job functions.

**Investigation Summary – Count A:**

A.    **Complainant's Evidence:**

1.  Complainant stated that she began working for Respondent on May 6, 2016, as a Collections Manager. Complainant stated that she supervised about eight (8) to 15 Collections Specialists.

2.  Complainant stated that in May 2016 Miranda was a Collections Specialist and her subordinate. Complainant stated that she was sexually harassed by Miranda between May 6, 2016 and June 2017.

3.  Complainant stated that on May 6, 2016 Miranda was upset and told her "Calm me down. Let's go to the hotel." Complainant stated that between May 2016 and June 2017 Miranda would approach her and ask, "Why don't we go to the hotel?" Complainant stated that his happened almost on a daily basis. Complainant stated that she would always tell Miranda to get away from her and she would leave.

4.  Complainant stated that in May 2016 she informed Tom Anderson (male, no PA), Chief Executive Officer, that Miranda was a difficult person to work with and that he kept asking her to go to the hotel. Complainant stated that Anderson told her that he would talk to Miranda.

---

[1] Protected Activity

Charge No.: 2019CF1455
Page 3 of 17

5. Complainant stated that in May 2016 Miranda approached her cubicle and stated, "What would I do with those tits." Complainant stated that she responded, "You're a sicko," and walked away.

6. Complainant stated that beginning in May 2016 Miranda would time his work departures with Complainant. Complainant stated that every time Miranda saw Complainant get on the elevator, he would try to get the door to open so he could get on the elevator with her. Complainant stated that once on the elevator Miranda would once again ask her to go to the hotel. Complainant stated that this happened three to four times per week.

7. Complainant stated that beginning in May 2016 and continuing daily, Miranda would look at her in a sexual manner, bite his lips and stare at her breasts.

8. Complainant stated that starting in May 2016 Miranda would call her on the phone approximately two to three times per week. Complainant stated that Miranda would breathe heavily and say, "This is your man." Complainant stated that one-time Miranda called and said that he needed Complainant in the hospital to comfort him. Complainant stated that she would always hang up the phone.

9. Complainant stated that in December 2016 Miranda asked Complainant to be his date for the company Christmas party. Complainant stated that she said no.

10. Complainant stated that she reported the sexual harassment to Respondent and as a result Miranda was moved to the sales department in June 2017. Complainant stated that between June 2017 and February 2018 she had no contact or interactions with Miranda.

11. Complainant stated that in February 2018 Miranda returned to the Collections Department as a Collections Manager, her equal. Complainant stated that once Miranda returned to collections he began sexually harassing her again.

12. Complainant stated that in February 2018 when she found out that Miranda was returning to collections she informed Alexandra Baron (female, no PA), former Vice President of Operations, about Miranda previously harassing her. Complainant stated that Baron told her that Miranda was only coming back for tax season and will be on the other side of the office and should not have any contact with Complainant. Complainant stated that Baron also told her to let her know if she has any issues with Miranda.

13. Complainant stated that in February 2018 Miranda approached her cubicle and stated, "I'm back and this time, you are going to take me to the hotel." Complainant stated that she told Miranda to get away from her.

14. Complainant stated that at the end of February 2018 she saw Miranda in the kitchen. Complainant stated that Miranda bit his lips and stated, "What would I do with you?" Complainant stated that she would always tell Miranda to get away from her and she would leave.

Charge No.: 2019CF1455
Page 4 of 17

15. Complainant stated that in late February 2018 or early March 2018 Miranda approached her cubicle and asked, "Why don't we go to the hotel?" Complainant stated that she would always tell Miranda to get away from her and she would leave.

16. Complainant stated that beginning in March 2018 Miranda would time his work departures with Complainant. Complainant stated that every time Miranda saw Complainant get on the elevator he would try to get the door to open so he could get on the elevator with her. Complainant stated that once on the elevator Miranda would once again ask her to go to the hotel. Complainant stated that this happened almost daily.

17. Complainant stated that beginning in March 2018 and continuing daily, Miranda would look at her in a sexual manner, bite his lips and stare at her breasts.

18. Bonita Gethers (female, no PA), Collections Specialist, stated that Miranda sat next to her. Gethers stated that on one occasion in 2017 or 2018, Miranda was talking about Complainant and stated, "I love those tits." Gethers stated that she told Miranda that Complainant was married, and he responded by saying, "Mind your own business."

19. Complainant stated that in June 2018 Miranda bumped into her on purpose by the printer and blocked her way out. Complainant stated that Miranda again asked, "When are we going to the hotel?" Complainant stated that she told Miranda to get away from her and left.

20. Complainant stated that every time that she told Miranda to leave her alone or to get away from her, he would say, "I like it when you get hostile."

21. Gethers stated that she did not hear Miranda say anything to Complainant about going to the hotel or any other sexual comments.

22. Complainant stated that beginning in February 2018 until May 2018 she had weekly meetings with Baron. Complainant stated that during all weekly meetings she informed Baron of the sexual harassment by Miranda. Complainant stated that Baron would say that she would take care of it but that nothing was ever done.

23. Complainant stated that in May 2018 Barb Kowalczyk (female, no PA), Vice President of Human Resources and Operations, took over for Baron while Baron was on maternity leave. Complainant stated that she informed Kowalczyk of the sexual harassment by Miranda. Complainant stated that Kowalczyk told her that such behavior would not be tolerated. Complainant stated that nothing was done about the harassment and that Miranda continued to sexually harass her until she was terminated on July 11, 2018.

24. Gethers stated that Complainant reported Miranda to management on multiple occasions, but she does not know what the outcome of Complainant's reports was.

25. Complainant stated that Diana Gajjar (female, PA), former Collections Specialist, also reported sexual harassment by Miranda in June 2018, which was witnessed by Tiffany

Charge No.: 2019CF1455
Page 5 of 17

Davis (female, no PA), Temporary Employee. Complainant stated that Gajjar sent her an e-mail regarding Miranda and that she forwarded it to Kowalczyk. Complainant stated that Kowalczyk said that she would take care of it, but nothing was ever done.

26. Complainant stated that Complainant's copy of Gajjar's June 13, 2018 e-mail to Complainant (**Exhibit A**) indicates that "I (Gajjar) just want to inform you that this morning I was training (Davis). (Miranda) walked by and gave us both a look that made me feel extremely uncomfortable. It was so noticeable to the point that (Davis) asked 'what is that all about?' I am just giving you a heads up because this made me feel very uncomfortable, as well as (Davis)."

27. Gajjar stated that on a couple occasions Miranda walked by her desk and "licked his lips suggestively" and made her feel uncomfortable. Gajjar stated that she reported to Baron and Kowalczyk that Miranda was making her feel uncomfortable when he kept coming by her desk. Gajjar stated that she does not know if Respondent took any action regarding her complaint.

28. Gajjar stated that she did not witness Miranda sexually harass Complainant. Gajjar stated that she witnessed Miranda coming by Complainant's desk frequently looking for Complainant, but that she did not hear him make any comments to Complainant. Gajjar stated that she felt uncomfortable because Miranda would come by Complainant's desk frequently. Gajjar stated that she witnessed Complainant tell Baron that Miranda was starting to look for Complainant again and that Complainant already told Baron about Miranda's behavior and harassment.

B. **Respondent's Evidence:**

1. Anderson stated that Respondent acquired Complainant's previous employer on May 6, 2016. Anderson stated that Complainant was a Collections Manager and that her responsibilities included managing a team and making collections calls.

2. Anderson stated that Respondent's Equal Employment Opportunity policy (**Exhibit B**) indicates that "(Respondent) is an Equal Opportunity Employer. Employment opportunities at (Respondent) are based upon one's qualifications and capabilities to perform the essential functions of a particular job. All employment opportunities are provided without regard to race, religion, sex, pregnancy, childbirth or related medical conditions, national origin, age, veteran status, disability, genetic information, or any other characteristic protected by law."

3. Anderson stated that Respondent's Sexual & Other Unlawful Harassment policy (**Exhibit C**) indicates that "Sexual harassment is a form of discrimination and is prohibited by law. For purposes of this policy sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when this conduct explicitly or implicitly affects an individual's employment, unreasonably interferes with an individual's work performance, or creates an intimidating, hostile, or offensive work environment. Unwelcome sexual advances (either verbal or physical), requests for sexual favors, and

Charge No.: 2019CF1455
Page 6 of 17

other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection fo the conduct is used as a basis for making employment decision; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment."

4. Anderson stated that Respondent's copy of Complainant's June 21, 2016 signed Legal Statement and Acknowledgement for Employee Handbook (**Exhibit D**) indicates that "My signature below indicates I have received a copy of the (Respondent) Employee Handbook. I have had an opportunity to review the Employee Handbook and ask questions. I further understand that (Respondent) may at any time add to, eliminate or change any policy or practice without notice. I further understand that the contents of the Employee handbook are confidential and I agree not to disclose the contents of the Employee Handbook, except to other (Respondent) employees or such other (Respondent) affiliates as may be necessary in the ordinary course of business. I understand that (Respondent) is an 'at-will' employer, and as such, my employment with (Respondent) is terminable by either party, with or without cause, and without prior notice."

5. Anderson stated that in 2016 Miranda was Complainant's subordinate. Anderson stated that following the acquisition both Complainant and Miranda approached him indicating that they could not work together and that they did not get along. Anderson stated that Complainant and Miranda would have issues regarding accounts due to their job being commission based. Anderson stated that at that time Complainant did not mention anything about harassment or sexual harassment or any of her allegations.

6. Anderson stated that in June 2017 Miranda approached him and indicated that he was tired of working in collections and working with Complainant. Anderson stated that Miranda was transferred to the sales department in June 2017.

7. Anderson stated that in early 2018 he asked Miranda to go back to collections for the tax season as a Collections Manager. Anderson stated that he also made the decision to split the collections department into active and non-active accounts. Anderson stated that Complainant was responsible for the active accounts and Miranda was responsible for the non-active accounts and therefore they had very little interaction with each other.

8. Miranda stated that he never asked Complainant to go to the hotel. Miranda stated that he was never in the elevator with Complainant. Miranda stated that he was on a very strict schedule because of custody issues with his daughter. Miranda stated that he hardly ever took a lunch at work because he would pick up his daughter during his lunch break. Miranda stated that he did not make a comment about Complainant's breasts. Miranda stated that he did not look at Complainant suggestively or look at her breasts or bite his lips.

Charge No.: 2019CF1455
Page 7 of 17

9. Miranda stated that when he returned to collections he had very little interactions with Complainant and kept his distance from Complainant. Miranda stated that he felt that Complainant was trying to get him terminated.

10. Baron stated that there was always contention between Complainant and Miranda and both would complain about each other but that neither ever alleged harassment or sexual harassment. Baron stated that due to the issues between Complainant and Miranda, Miranda would report directly to Anderson. Baron stated that Complainant never reported sexual harassment or make mention of any harassing comments or behaviors. Baron stated that Complainant never reported that Miranda asked her to go to the hotel, or any other comments or behaviors. Baron stated that all complaints were work related and about accounts and were more so "bickering" between team members that did not get along.

11. Baron stated that when Miranda returned to collections in February 2018 there was no interaction between him and Complainant. Baron stated that she made sure there was no overlap in accounts and that any necessary conversations about accounts would go through her.

12. Kowalczyk stated that around May or April 2018 she had a sit down with Complainant and Miranda as well as others in the office in order to get to know the staff. Kowalczyk stated that Complainant told her to watch out for Miranda and that Miranda had previously made a comment about her breasts. Kowalczyk stated that she asked if this was before or after the acquisition and Complainant indicated that it was before. Kowalczyk stated that Complainant also indicated that Anderson did not know about the comment because it was before he became CEO. Kowalczyk stated that she informed Complainant that Respondent has a strict sexual harassment policy and that if anything else took place to report it to her. Kowalczyk stated that during this meeting, or any other meeting, Complainant never mentioned comments about going to the hotel or any other sexually harassing comments or behaviors by Miranda.

13. Kowalczyk stated that in June 2018 Gajjar reported that Miranda would come by her desk and said "Hi," and would ask questions. Kowalczyk stated that Gajjar sent her an e-mail and copied Complainant on the e-mail. Kowalczyk stated that Gajjar reported that Miranda looked at her in an intimidating way. Kowalczyk stated that she met with Gajjar regarding her complaint. Kowalczyk stated that Gajjar indicated that Miranda was intimidating her like Donald Trump with Hilary Clinton during the presidential debate. Kowalczyk stated that she addressed the issue with Miranda but found that no further action was warranted.

14. Miranda stated that he had a good working relationship with Gajjar. Miranda stated that he would go by her cubicle in a supervisory capacity, but that he did not have any issues with her nor did he sexually harass her.

Charge No.: 2019CF1455
Page 8 of 17

C.    **Complainant's Rebuttal:**

1.  Complainant stated that Anderson did not tell her that Miranda would report to him. Complainant stated that Miranda reported to her.

2.  Complainant stated that when Respondent bought her previous company, she was given more responsibilities but not more pay.

3.  Complainant stated that she reported the sexual harassment by Miranda to the previous owner. Complainant stated that when Respondent took over she signed a document indicating that Respondent was not liable for any past complaints which may have occurred prior to the May 2016 acquisition.

4.  Complainant stated that Respondent did not take any action against Miranda because Complainant and Miranda were both top collectors for Respondent. Complainant stated that Miranda was allowed to work a special schedule because of his high numbers.

5.  Complainant stated that there were other sexual harassment complaints filed against Miranda.

6.  Complainant stated that she reported the sexual harassment to Baron, Kowalczyk and Anderson.

**Analysis – Count A:**

The investigation revealed that Complainant alleges that Miranda, Complainant's equal and a member of management, on multiple occasions made unwanted sexually offensive and inappropriate sexually-related comments and looks towards Complainant. Complainant maintains that the comments and actions by Miranda occurred almost on a daily basis. Complainant's specified allegations include the following:

- In May 2016 Miranda approached Complainant and stated, "What would I do with those tits."
- Beginning in May 2016 and continuing almost daily, Miranda would ask Complainant to take him to the hotel.
- Beginning in May 2016 and continuing daily, Miranda would call Complainant and breathe heavily and say, "This is your man."
- Beginning in May 2016 and continuing almost daily, Miranda would time his work departures with Complainant and once on the elevator Miranda would once again ask her to go to the hotel.
- Beginning in May 2016 and continuing daily, Miranda would look at Complainant in a sexual manner, bite his lips and stare at her breasts.
- At the end of February 2018 in the kitchen Miranda bit his lips and stated, "What would I do with you?"
- In late February 2018 or early March 2018 Miranda approached Complainant's cubicle and asked, "Why don't we go to the hotel?"

Charge No.: 2019CF1455
Page 9 of 17

- In June 2018 Miranda bumped into Complainant on purpose and once again asked, "When are we going to the hotel?"

Complainant maintains, and Respondent denies, that beginning in May 2016 Complainant began reporting the sexual harassment by Miranda to Anderson, Baron and Kowalczyk. Respondent maintains that Respondent never received a sexual harassment complaint from Complainant at any time during her employment with Respondent.

## Findings and Conclusion – Count A:

A finding of **Substantial Evidence** is recommended because:

The investigation revealed that Complainant maintains, and Respondent denies, that Complainant reported alleged sexually offensive conduct to Anderson in May 2016 and to Baron and Kowalczyk beginning in February 2018 when Miranda returned to the collections department. Complainant further maintains that she opposed Miranda's sexually harassing conduct as it occurred. The investigation revealed that Complainant's alleged incidents of sexual harassment by Miranda occurred on numerous occasions and/or daily between May 2016 and June 2017 and again between February 2018 and July 2018, which would constitute a pattern of unwelcome sexually offensive behavior, and therefore constitute sexual harassment. The allegations of sexually offensive conduct include incidents that are severe and/or pervasive, and of a sexually hostile nature. Miranda denies that he engaged in any sexually offensive conduct or made any sexually offensive comments to Complainant. The investigation revealed that Miranda was a member of Respondent's management, and therefore was an agent of Respondent, and therefore Respondent is considered to have been responsible for the actions if they occurred. Respondent maintains that Complainant did not make any sexual harassment complaints during her employment with Respondent. Conflicting testimony between Complainant and Respondent necessitates credibility determinations. As the Department is barred from making credibility determinations, which must be made by a trier of fact, a finding of substantial evidence is recommended.

## Complainant's Allegations – Count B:

Complainant alleges that on July 11, 2018, Respondent discharged her in retaliation for her protected activity of opposing and reporting sexual harassment. Complainant maintains that she reported the sexual harassment to Respondent in 2016, 2017 and on multiple occasions between February 2018 and July 2018, and that Respondent was aware of Complainant's protected activity. Complainant maintains that her job performance was satisfactory. Complainant maintains that Respondent discharged her on July 11, 2018, for allegedly asking another employee to make a false report of sexual harassment. Complainant maintains that Respondent's action occurred within a short time period following her protected activity, thereby raising an inference of retaliatory motive.

## Respondent's Defenses – Count B:

Respondent's articulated legitimate non-discriminatory reason for discharging Complainant on July 11, 2018, is due to Complainant asking a temporary employee to make a false report of sexual harassment. Respondent denies that Complainant participated in a protected activity in 2016,

Charge No.: 2019CF1455
Page 10 of 17

2017, 2018 or at any time during her employment. Respondent denies that Complainant was sexually harassed in Respondent's workplace. Respondent maintains that there was no causal nexus between Complainant's alleged sexual harassment complaint and any alleged adverse action it took toward Complainant.

**Investigation Summary – Count B:**

A.  **Complainant's Evidence:**

1.  Complainant stated that she reported sexual harassment by Miranda to Baron and Kowalczyk on multiple occasions in 2018. Complainant stated that she also previously reported sexual harassment by Miranda in 2016 and 2017 to Anderson.

2.  See Investigation Summary – Count B: Complainant's Evidence.

3.  Complainant stated that on July 9, 2018 she returned to work after vacation. Complainant stated that Anderson called her in the office and asked about Gajjar's complaint against Miranda. Complainant stated that Anderson also asked her about Tiffany Davis (female, no PA), Temporary Employee. Complainant stated that she did not tell Davis anything. Complainant stated that during that meeting she informed Anderson once again that Miranda is a sexual harasser and that nothing has been done about it. Complainant stated that Anderson sent her home at the end of the meeting.

4.  Complainant stated that Anderson called her on July 11, 2018 and informed her that she was being terminated. Complainant stated that she was not given a reason for her termination.

5.  Complainant stated that after she was fired Miranda was promoted.

6.  Gajjar stated that Miranda became her boss after Complainant was terminated. Gajjar stated that she reported to Respondent that Miranda was making her feel uncomfortable, but nothing was done and ultimately, she resigned in September 2018. Gajjar stated that after she resigned Anderson called her and asked her if she quit because of Miranda and Gajjar told him that she did. Gajjar stated that Anderson offered for her to come back and work at another location, but she declined.

7.  Complainant stated that she does not know of anyone else terminated by Respondent.

B.  **Respondent's Evidence:**

1.  Anderson stated that Complainant was a good performer when it came to collections but that her performance as a manager was poor.

2.  See Investigation Summary – Count B: Respondent's Evidence.

3.  Anderson stated that Respondent's At-Will Employment policy **(Exhibit E)** indicates that "Employment with (Respondent) is 'at-will.' This means employees are free to resign at any time, with or without cause, and (Respondent) may terminate the

employment relationship at any time, with or without cause or advance notices. As an at-will employee, it is not guaranteed, in any manner, that you will be employed with (Respondent) for any set period of time."

4. Anderson stated that Respondent's Anti-Retaliation and Whistleblower Policy **(Exhibit F)** indicates the following:

> This policy is designed to protect employees and address (Respondent's) commitment to integrity and ethical behavior. In accordance with anti-retaliation and whistleblower protection regulations, (Respondent) will not tolerate any retaliation against an employee who:
>
> - Makes a good faith complaint, or threatens to make a good faith complaint, regarding the suspected Company employee violations of the law, including discriminatory or other unfair employment practices;
> - Makes a good faith complaint, or threatens to make a good faith complaint, regarding accounting internal accounting controls, or auditing matters that may lead to incorrect, or misrepresentations in, financial accounting;
> - Makes a good faith report, or threatens to make a good faith report, of a violation that endangers the health or safety of an employee, patient, client or customer, environment or general public;
> - Objects to, or refuses to participate in, any activity, policy or practice, which the employee reasonably believes is a violation of the law;
> - Provides information to assist in an investigation regarding violations of the law; or
> - Files, testifies, participates or assists in a proceeding, action or hearing in relation to alleged violations of the law.

5. Anderson stated that Respondent's copy of Complainant's April 28, 2016 Employment Agreement **(Exhibit G)** indicates the following:

> Either party may terminate the Employee's employment under this Agreement (including her employment during the Renewal Term), with or without Cause, at any time by providing the other party 30 days' advance notice of the termination. If this Agreement is terminated by the Company for Cause, then the Employee's termination may be immediate and without prior notice. As used in this Agreement, "Cause" means Employee's: (a) fraud, misappropriation, embezzlement, material dishonesty, or other act of material misconduct against the Company; (b) willful misconduct or gross negligence in the performance of her duties, (c) substantial and continued failure to perform her duties and responsibilities or continued failure to carry out the lawful directives of the Board consistent with the Employee's title; (d) violation of any laws, rules or regulations of any governmental or regulatory body, which violation is materially injurious to the Company's financial condition or reputation…"

Charge No.: 2019CF1455
Page 12 of 17

6. Anderson stated that in 2017 Complainant's performance in managing her collections team began to decline. Anderson stated that Complainant's team was not performing well enough. Anderson stated that Complainant's performance at collections was still good. Anderson stated that ultimately Complainant's collections team became smaller and Complainant's responsibilities decreased but her pay remained the same.

7. Anderson stated that he would receive complaints about Complainant from Complainant's team and temporary employees from LaSalle Network.

8. Anderson stated that Respondent's copy of LaSalle Network's Summary of Complaints dated between February 2018 and July 2018 (**Exhibit H**) indicates a summary of various employee complaints against Complainant such as Complainant speaking to employee in a condescending manner or yelling at employees; Complainant assigning tasks and later saying she did not instruct employees to perform those tasks; and, Complainant threatening to not approve time cards of temporary employees.

9. Anderson stated that Complainant also received a Better Business Bureau (BBB) complaint and the Consumer Financial Protection Bureau. Anderson stated that Complainant received a written warning for the policy violations and he met with Complainant and went over the issues.

10. Anderson stated that Respondent's copy of Complainant's March 9, 2018 BBB customer complaint (**Exhibit I**) indicates the following "I received a phone call from the 'pre-legal' team at my place of employment yesterday. I did not realize who was calling at first because they did not state what company they were with and why they were calling. I actually get transferred twice to a manager named Lisa *****[2] who when I explained that I was at my job and wasn't able to talk insistently continued to pressure me in stating that they 'were about to process paperwork and send it to court where you will have to pay the legal fees and court fees as well.' I tried to get her to explain what exactly that meant and couldn't get a clear answer. She stated if they resolve the debt now it would stop. I continued to get pressured after stating I do not have the money to afford the settlement since I am a college student and this continues to go back and forth until I finally just gave in and gave them my credit card information. When I called Lisa ***** back after realizing what I had done I asked to remove my card from the system. She started to raise her voice and be hostile. I explained I don't have the money to provide the payment and I would like the card removed. She then stated 'you do understand we will be processing paperwork tomorrow and you will be going to court.' I told her I understand but I would just like my card off the account. She then stated 'so you're refusing to pay.' I said I just want my card off of the account. She asked the same question again (I assume this was to get my to concede) I then stated to her no I am not I just want my card off of the account. After making that statement she said 'I don't have time for your games, please hold" and left me on hold to the point I hung up. I then called back in and hour and told her that she rude left me on the phone and she stated 'I did not rudely leave you on hold I had another customer, if you rudely hung up that I can't help that.'"

---

[2] Respondent reported that Lisa Ortiz was Complainant's pseudonym used during collection calls.

Charge No.: 2019CF1455
Page 13 of 17

11. Anderson stated that in July 2018 Davis approached another member of management and indicated that she was uncomfortable working with Complainant due to Complainant's style and aggression. Anderson stated that Davis also indicated that Complainant asked her to make a complaint against Miranda. Anderson stated that Davis had no reason to make this up. Anderson stated that he asked Davis multiple times about what happened, and Davis indicated that Complainant asked her to make the complaint and that Gajjar had knowledge of this as well. Anderson stated that Davis informed him that she hardly knew who Miranda was.

12. Anderson stated that Respondent's July 9, 2018 Memorandum **(Exhibit J)** indicates that Anderson spoke with Davis and that Davis reported the following:

   1. On multiple occasions, she (Davis) felt that (Complainant) talked very aggressively and "yelled" at her during the course of her time at (Respondent).
   2. Prior to today she had limited interaction with (Miranda) and on those limited occasions did not feel like he behaved inappropriately or unprofessionally.
   3. She was aggressively asked by (Complainant) to submit a formal complaint against (Miranda) on 2 separate occasions for inappropriate behavior and on both occasions, (Davis) did not feel that (Miranda) had done anything wrong or anything to warrant a complaint.
   4. During (Davis') conversations with (Complainant), (Complainant) told (Davis):

      o She should not talk to (Miranda) and other employees outside her department.
      o Indicated that (Kowalczyk), who is (Complainant's) direct supervisor, should not be taken seriously as she is only a short-term replacement for (Baron), (Complainant's) previous supervisor.
      o Referred to one member of management or collective management using inappropriate language (including, but not limited to, mother*ckers).

   5. (Davis) felt uncomfortable with the working environment that (Complainant) created.

13. Anderson stated that he met with Complainant on July 9, 2018 and informed her of the seriousness of the situation. Anderson stated that he asked Complainant if she asked Davis to make a report and Complainant stated that she did not. Anderson stated that he sent Complainant home and informed her that Respondent needed to investigate.

14. Anderson stated that Respondent's July 9, 2018 Memorandum **(Exhibit J)** indicates that Anderson met with Complainant regarding the following:

Charge No.: 2019CF1455
Page 14 of 17

(Anderson) asked (Complainant) to explain the incident concerning (Davis) and (Miranda).

(Complainant) explained that:

- She believed (Davis) felt uncomfortable with (Miranda).
- (Complainant) had not witnessed any interaction between (Miranda) and (Davis) but had "heard about it." (Complainant) declined to say where she had heard about it from.
- (Complainant) had not at any time asked (Davis) to file a formal complaint.

(Complainant) also explained that her and (Miranda) "had history." (Anderson) asked if this "history" or any other human resource issues related to (Miranda) occurred since the transition of ownership of the company on May 6, 2016. (Complainant) stated that no such incidences occurred in that time frame and that all incidents were prior to the transition of ownership in the company. (Complainant) also confirmed that she did not talk or interact with (Miranda) in any meaningful way since the transition of ownership.

(Anderson) has no knowledge of any complaints made against (Miranda) by (Complainant) since the transition of ownership.

(Anderson) explained to (Complainant) that a complaint had been made against her that was serious in nature and that he was currently investigating that complaint.

15. Anderson stated that Respondent investigated and found that Complainant breached the company policy when asking the temporary employee to make a false report.

16. Anderson stated that on July 11, 2018 he called Complainant and informed her that Respondent decided not to renew her contract.

17. Anderson stated that no one else engaged in a policy violation as egregious as Complainant which would warrant termination.

C.  **Complainant's Rebuttal:**

1. Complainant stated that she reported the sexual harassment to Baron, Kowalczyk and Anderson.

2. See Investigation Summary – Count B: Complainant's Rebuttal.

3. Complainant stated that she did not receive any disciplinary actions.

Charge No.: 2019CF1455
Page 15 of 17

4. Complainant stated that she did not supervise the temporary employees and that they were supervised by the temporary agency.

5. Complainant stated that Davis was a temporary employee and her numbers were not good. Complainant stated that Davis was not a good collector and was about to be terminated.

6. Complainant stated that she did not tell Davis to file a complaint against Miranda.

**Analysis – Count B:**

The investigation revealed that Complainant maintains, and Respondent denies, that she participated in a protected activity in 2016, 2017 and on multiple occasions between February 2018 and July 2018, when she complained about alleged sexual harassment by Miranda to Anderson, Baron and Kowalczyk. Complainant alleges that on July 11, 2018 she was discharged for allegedly asking a temporary employee to file a false sexual harassment report. Respondent maintains that Complainant was discharged after Respondent's investigation found that Complainant requested for a temporary employee to file a false sexual harassment complaint against Miranda. The investigation revealed that Complainant's separation from Respondent occurred within a short period of time following Complainant's alleged report of sexual harassment against Miranda, raising an inference of retaliatory motivation.

**Findings and Conclusion – Count B:**

A finding of **Substantial Evidence** is recommended because:

The investigation revealed that Complainant's employment with Respondent was terminated on July 11, 2018, after Complainant allegedly asked a temporary employee to file a false sexual harassment complaint. The evidence shows that Respondent maintains that Complainant never made any sexual harassment complaints during her employment with Respondent. Complainant maintains that she made multiple sexual harassment complaints in 2016, 2017 and between February 2018 and July 2018. Respondent ended the employment relationship with Complainant shortly after Complainant's alleged complaints/opposition to the alleged conduct and Complainant may be able to show that the termination was casually connected to the complaint and thus retaliatory. Conflicting testimony between Complainant and Respondent necessitates credibility determinations. As the Department is barred from making credibility determinations, which must be made by a trier of fact, a finding of substantial evidence is recommended.

**Witness List:**

A. Complainant                                    CPI, FFC
   C/o Jolianne S. Alexander, Attorney
   Mirabella, Kincaid, Frederick & Mirabella, LLC
   1737 S. Naperville Rd., Suite 100
   Wheaton, IL 60189
   (630)665-7300

Charge No.: 2019CF1455
Page 16 of 17

    B.  Barb Kowalczyk (female, no PA)        FFC
        Vice President of Human Resources and Operations
        C/o Jennifer J. Froehlich, Attorney
        Holland & Knight, LLP
        150 N. Riverside Plaza, Suite 2700
        Chicago, IL 60606
        (312)715-5775

    C.  Tom Anderson (male, no PA)        FFC
        Chief Executive Officer
        C/o Jennifer J. Froehlich, Attorney
        Holland & Knight, LLP
        150 N. Riverside Plaza, Suite 2700
        Chicago, IL 60606
        (312)715-5775

    D.  Alexandra Baron (female, no PA)        FFC
        Former Vice President of Operations
        C/o Jennifer J. Froehlich, Attorney
        Holland & Knight, LLP
        150 N. Riverside Plaza, Suite 2700
        Chicago, IL 60606
        (312)715-5775

    E.  Luis Miranda (male, no PA)        FFC
        Business Development Mediation Manager
        C/o Jennifer J. Froehlich, Attorney
        Holland & Knight, LLP
        150 N. Riverside Plaza, Suite 2700
        Chicago, IL 60606
        (312)715-5775

    F.  Bonita Gethers (female, no PA)        Telephone interview, 11/20/19
        Former Collections Specialist
        1101 Marshall Ave.
        Bellwood, IL 60104
        (708)435-3503

    G.  Dianna Gajjar (female, PA)        Telephone interview, 12/18/19
        Former Collections Specialist
        5041 W. Jarlath
        Skokie, IL 60077
        (847)309-8617

Charge No.: 2019CF1455
Page 17 of 17

**Exhibits:**

    A. Complainant's copy of Gajjar's June 13, 2018 e-mail to Complainant.

    B. Respondent's Equal Employment Opportunity policy.

    C. Respondent's Sexual & Other Unlawful Harassment policy.

    D. Respondent's copy of Complainant's June 21, 2016 signed Legal Statement and Acknowledgement for Employee Handbook.

    E. Respondent's At-Will Employment policy.

    F. Respondent's Anti-Retaliation and Whistleblower Policy.

    G. Respondent's copy of Complainant's April 28, 2016 Employment Agreement.

    H. Respondent's copy of LaSalle Network's Summary of Complaints dated between February 2018 and July 2018.

    I. Respondent's copy of Complainant's March 9, 2018 BBB complaint.

    J. Respondent's July 9, 2018 Memorandum.

MERIT REPORT.docm
12/17